U. S. MARKETING, INC., an Idaho
Corporation and Niks and Naks
Adult Bookstore, Plaintiffs,

v.

The Honorable David LEROY, as Attorney
General of the State of Idaho in his
representative capacity only; James
Harris, Ada County Prosecuting Attor-
ney, in his representative capacity only;
and The Honorable W. E. Smith, District
Judge of the Fourth Judicial District of
the State of Idaho in and for the County
of Ada, in his representative capacity
only, Defendants,

and

James L. Titmus, Sr., private citizen and
resident of Ada County, Idaho, Interve-
nor and New Party Defendant.

No. 81-1282.

United States District Court,
D. Idaho.

Oct. 30, 1981.

David W. Cantrill, Cantrill & Skinner,
William Tway and Anton Holder, Tway &
Tway, Boise, Idaho, for plaintiffs.

Lynn Thomas, Sol. Gen., Scott Campbell,
Asst. Ada County Prosecuting Atty., Boise,
Idaho, for defendants.

Gordon S. Nielson, Nielson & McAllister,
Boise, Idaho, Bruce A. Taylor, Citizens for
Decency through Law, Phoenix, Ariz., for
intervenor, James Titmus, Sr.

MEMORANDUM OF OPINION AND
ORDER OF DISMISSAL

RAY McNICHOLS, District Judge.

FINDINGS OF FACT

On August 20, 1981, plaintiffs filed a
complaint with this court requesting that
the Idaho Moral Nuisance Abatement Act,
Idaho Code §§ 52–401 *et seq.*, be declared
unconstitutional, and that defendants be
enjoined from further enforcement of said
Act. The action was brought pursuant to
42 U.S.C. § 1983, 28 U.S.C. § 2201 and
Fed.R.Civ.P. 57. Jurisdiction was sought
pursuant to 28 U.S.C. § 1331, 28 U.S.C.
§ 1343(a)(3) and 28 U.S.C. § 2202.

Prior to the initiation of this action in
federal court, the Idaho Supreme Court de-
cided several issues involving the same par-

ties plaintiff and originally named defendants. See *State of Idaho, ex rel. Kidwell, et al. v. U. S. Marketing, Inc., et al.*, 102 Idaho 451, 631 P.2d 622 (1981). In *U. S. Marketing, supra*, the Idaho Supreme Court, in reversing and remanding to the district court, held that a one-year closure or forfeiture order does not by itself constitute an unlawful prior restraint upon the exercise of free speech.[1]

## OPINION

The court finds the preliminary consideration to be whether or not the plaintiffs' request for injunctive and declaratory relief falls within the abstention doctrine identified with *Younger v. Harris*, 401 U.S. 37, 91

1. In *U. S. Marketing* the State of Idaho commenced an action against two Garden City adult bookstores under the provisions of the Idaho Moral Nuisance Abatement Act. Idaho Code §§ 52–401 *et seq.* The named defendants were U.S. Marketing, Inc., and Niks & Naks Adult Bookstore, their managers, owners, officers and incorporators, and those individuals who owned the two parcels of property upon which the bookstores were located.

The state sought to have some of defendants' films and publications declared obscene. The state requested injunctive relief abating the alleged nuisance, a one-year forfeiture of the use of the real property, and an award of the costs of abatement including investigative costs, court costs and attorney fees.

Responding to a motion to dismiss, the trial judge disposed of several threshold constitutional issues, holding that the nuisance abatement proceedings are a proper and constitutional method of attempting to control the sale and distribution of obscene materials. The judge concluded that the defendants could be enjoined from further sale and distribution of these materials adjudicated to be obscene. However, the judge held that the statutory provisions which permitted any forfeiture or closure of the physical premises and real property constituted an unlawful prior restraint on free speech and a violation of due process.

The owners of the two parcels of property were then dismissed from the lawsuit. Two of these individuals, Cecil Johnson and Helen Hanson, lease their property to Niks and Naks. Johnson and Hanson were dismissed, presumably because the remedies available against the real property were held to be unconstitutional. After granting the motion to dismiss, the trial judge awarded costs and attorney fees to Johnson and Hanson. The state objected to the award below and raised that issue again on appeal to the Idaho Supreme Court.

S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Huffman v. Pursue Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The United States Supreme Court in *Younger, supra*, held that a federal court should not enjoin a state criminal prosecution begun prior to the institution of the federal suit except in very unusual situations, where necessary to prevent immediate irreparable injury. The Supreme Court further held that ordinarily no immediate irreparable injury exists if the threat to plaintiffs' federally protected rights can be eliminated by the defense of a single criminal prosecution, and that "even irreparable injury is insufficient unless it is both great and immediate." *Id.* at 46, 91 S.Ct. at 751.

A trial was held on the merits before the district judge, who found that most of the state's exhibits were obscene. The state attempted to collect the "costs of abatement" pursuant to Idaho Code § 52–415. The trial judge awarded the state only a limited amount for attorney fees, stating that the attorneys did not keep adequate hourly time records.

The state appealed, contending (1) that the one-year forfeiture or closure order sought by the state is *not* an unconstitutional prior restraint upon free speech; (2) that the trial court's reduced award for abatement costs against the remaining defendants was in error; and (3) that it was error for the court to grant costs and attorney fees to dismiss defendants Hanson and Johnson. The trial defendants cross-appealed, alleging that the state was not entitled to *any* abatement costs.

The Idaho Supreme Court made it clear that "the sole constitutional question presented in this appeal is whether a district court may impose a one-year forfeiture of the use of real property upon a finding, made pursuant to constitutionally acceptable procedures, that obscene materials were disseminated on the property." *Id.* 631 P.2d at 624.

The Idaho Supreme Court reversed and remanded to the district court holding (1) that under the "circumstances of this case, a one-year closure or forfeiture order does not by itself constitute an unlawful prior restraint upon the exercise of free speech," *Id.*, 631 P.2d at 629; (2) "The trial court's nominal award of attorney fees, and denial of other abatement costs including investigative costs, printing costs, and the like, is not in keeping with the legislative policy set out in I.C. § 52–415," *Id.*, 631 P.2d at 630; (3) That Johnson and Hanson can no longer be considered prevailing parties, therefore any award of costs and attorney fees must await the final outcome of this case on remand, *Id.* 631 P.2d at 630.

The Supreme Court gave the name "Our Federalism" to the concept of comity that was at the heart of the *Younger* decision. "Our Federalism", wrote Justice Black, represents

"a system in which there is sensitivity to the legitimate interest of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interest, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the State." *Id.* at 44, 91 S.Ct. at 750.

The Supreme Court in *Younger* was silent as to what extent the *Younger* doctrine restricts a federal court from interfering with civil actions in state courts in which the state, or its officers or agencies, is seeking to enforce state laws. This question came before the Court in *Huffman v. Pursue, Ltd., supra.* In *Huffman*, the state brought an action in state court under a statute providing that a place that exhibits obscene films is a nuisance and can be ordered closed for a year. Judgment was granted for the state. The film theater did not appeal the state judgment but brought a federal action against the state authorities. The federal district court, without considering *Younger*, enjoined enforcement of the state court's judgment insofar as it barred the theater from showing films that had not been adjudged obscene. The Supreme Court held that under these circumstances the federal injunction was improper unless the *Younger* test was satisfied.[2]

In *U. S. Marketing*, the Idaho Supreme Court remanded the case to the trial court for further proceedings, thus the action is still pending within the meaning of the *Younger* doctrine. The only issue left for this court to decide is whether any of the exceptions to the *Younger* doctrine are applicable to this case. There are instances where federal intervention is proper. As the Supreme Court noted in *Huffman*:

*Younger*, and its civil counterpart which we apply today, do of course allow intervention in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is " 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.' " *Id.* at 611, 95 S.Ct. at 1212.

Plaintiffs have alleged no bad faith or harassment on the part of the state.[3]

2. Although the Supreme Court made no general pronouncement upon the applicability of *Younger* to all civil litigation, the Court found that the *Younger* doctrine was applicable to state initiated nuisance proceedings. The Court stated:

"The component of *Younger* which rests upon the threat to our federal system is thus applicable to a civil proceeding such as this quite as much as it is to a criminal proceeding. *Younger*, however, also rests upon the traditional reluctance of courts of equity, even within a unitary system, to interfere with a criminal prosecution. Strictly speaking, this element of *Younger* is not available to mandate federal restraint in civil cases. But whatever may be the weight attached to this factor in civil litigation involving private parties, we deal here with a state proceeding which in important respects is more akin to a criminal prosecution than are most civil cases. The State is a party to the Court of Common Pleas proceeding, and the proceeding is both in aid of and closely related to criminal statutes which prohibit the dissemi-

nation of obscene materials. Thus, an offense to the State's interest in the nuisance litigation is likely to be every bit as great as it would be were this a criminal proceeding." *Id.* at 604, 95 S.Ct. at 1208.

3. Plaintiffs have attempted to distinguish *Huffman* on the fact that in *Huffman* the plaintiffs chose not to seek appellate review in the state court system. This observation cannot be considered a distinguishing factor, since the plaintiffs before this court have a right to file an appeal from the State Supreme Court to the United States Supreme Court. Although the United States Supreme Court did not say in *Huffman* that failure to file an appeal automatically required abstention, there is a strong suggestion by the Court that abstention would be appropriate in the case where direct appeal is either still available to the litigants or has been intentionally foregone. As the Supreme Court in *Huffman* noted:

Intervention at the later state is if anything more highly duplicative, since an entire trial

Based upon a review of the relevant statutes and briefs submitted by both parties, it is the opinion of this court that the Idaho Moral Nuisance Abatement Act is not flagrantly and patently violative of express constitutional prohibitions in every clause. This conclusion is supported by the decision of the Idaho Supreme Court in *U. S. Marketing*.

Based on considerations found in *Younger* and *Huffman*, it is the duty of this court to abstain from hearing the case before it on the merits.[4] This case is ripe for dismissal and I hereby order the matter dismissed with prejudice.

has already taken place, and it is also direct aspersion on the capabilities and good faith of state appellant courts. Nor, in these state-initiated nuisance proceedings, is federal intervention at the appellate stage any the less a disruption of the State's efforts to protect interests which it deems important. *Id.* at 608, 95 S.Ct. 1210.

4. Although it is not necessary for this court to rule upon the issue, it is possible that the doctrines of res judicata and collateral estoppel would prohibit plaintiffs from bringing this action. This question is particularly appropriate in light of the recent United States Supreme Court decision of *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). In *Allen v. McCurry* the Supreme Court held that the Court of Appeals had erred in holding the respondent's inability to obtain federal habeas corpus relief upon his Fourth Amendment claim renders the doctrine of collateral estoppel inapplicable to his 42 U.S.C. § 1983 suit. The Court held that nothing in the language or legislative history of § 1983 discloses any Congressional intent to deny binding effect to a state-court judgment or decision when the state court, acting within its proper jurisdiction, has given the parties a full and fair opportunity to litigate their federal claims.